Nos. 2023-2256, 2023-2258

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

MAXELL, LTD.,

*Appellant*

v.

AMPEREX TECHNOLOGY LIMITED,

*Appellee*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-01440 and IPR2021-01443

**RESPONSE BRIEF OF APPELLEE AMPEREX TECHNOLOGY LIMITED**

KIRK T. BRADLEY
NICHOLAS C. MARAIS
CHRISTOPHER TL DOUGLAS
ALSTON & BIRD LLP
1120 South Tryon Street,
Suite 300
Charlotte, NC 28203
(704) 444-1030

BRADY COX
ALSTON & BIRD LLP
Chase Tower, 2200 Ross Avenue,
Suite 2300
Dallas, Texas 75201
(214) 922-3443

*Counsel for Appellee Amperex Technology Limited*

January 10, 2024

## **Claim 1 of U.S. Patent No. 8,691,446**

1. A nonaqueous secondary battery comprising: a positive electrode having a positive electrode mixture layer, a negative electrode, and a nonaqueous electrolyte,

wherein the positive electrode contains, as an active material, at least two lithium-containing transition metal oxides having different average particle sizes,

wherein said at least two lithium-containing transition metal oxides having different average particle sizes have different compositions of elements between them,

said lithium-containing transition metal oxide having the smallest average particle size is a lithium-containing transition metal oxide represented by the formula (1):

$$Li_xM^1_yM^2_zM^3_vO_2 \qquad\qquad (1)$$

wherein $M^1$ represents at least one transition metal element selected from Co, Ni and Mn, $M^2$ represents Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn, $M^3$ represents an element other than Li, $M^1$ and $M^2$, and x, y, z and v are numbers satisfying the equations respectively: $0.97{\leqq}x{<}1.02$, $0.8{\leqq}y{<}1.02$, $0.002{\leqq}z{\leqq}0.05$, and $0{\leqq}v{\leqq}0.05$,

the positive electrode mixture layer has a density of at least 3.5 g/cm$^3$, and

the nonaqueous electrolyte contains a compound having at least two nitrile groups in the molecule.

i

**Claim 1 of U.S. Patent No. 9,350,019**

1. A nonaqueous secondary battery comprising: a positive electrode having a positive electrode mixture layer, a negative electrode, and a nonaqueous electrolyte, wherein

the positive electrode contains, as an active material, at least two lithium-containing transition metal oxides having different average particle sizes,

said lithium-containing transition metal oxide having the smallest average particle size is a lithium-containing transition metal oxide represented by the formula (1):

$$Li_xM^1_yM^2_zM^3_vO_2 \qquad\qquad (1)$$

wherein $M^1$ represents at least one transition metal element selected from Co, Ni and Mn, $M^2$ represents Mg, or Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn, $M^3$ represents an element other than Li, $M^1$ and $M^2$, and x, y, z and v are numbers satisfying the equations respectively: $0.97 \leqq x < 1.02$, $0.8 \leqq y < 1.02$, $0.002 \leqq z \leqq 0.05$, and $0 \leqq v \leqq 0.05$;

a content of Mg in the formula (1) is from 0.15% by mole to less than 2% by mole based on an amount of the metal element $M^1$;

the positive electrode mixture layer has a density of at least 3.5 g/cm$^3$; and the nonaqueous electrode mixture contains a compound having at least two nitrile groups in the molecule.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-2256

**Short Case Caption** Maxell, Ltd. v. Amperex Technology Limited

**Filing Party/Entity** Amperex Technology Limited

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/23/2023

Signature: /s/ Christopher TL Douglas

Name: Christopher TL Douglas

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Amperex Technology Limited | | TDK Corporation |
| | | TDK HongKong Company Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| Alson & Bird LLP | Miranda Sooter | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-2258 |
| **Short Case Caption** | Maxell, Ltd. v. Amperex Technology Limited |
| **Filing Party/Entity** | Amperex Technology Limited |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/23/2023

Signature:  /s/ Christopher TL Douglas

Name:  Christopher TL Douglas

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Amperex Technology Limited | | TDK Corporation |
| | | TDK HongKong Company Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Alson & Bird LLP | Miranda Sooter | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. xii

STATEMENT OF RELATED CASES ................................................ xiv

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE ............................................................... 3

I.     Technology Background ............................................................. 3

II.    The Challenged Maxell Patents .................................................. 4

III.   The "Choi" and "Kim" Prior Art References ............................. 6

       A.     Chinese Patent Publication No. CN1822414 ("Choi") ........ 6

       B.     U.S. Patent Publication No. 2005/0208371 ("Kim") ......... 7

IV.    The Board's Final Written Decisions Finding the Maxell Patent
       Claims Unpatentable ................................................................... 9

       A.     The Board Found That a POSITA Would Have Been
              Motivated to Combine Choi and Kim. ............................. 10

       B.     The Board Found That Choi Disclosed All Elements
              Except the Dinitrile Compound, Which Kim Disclosed. .... 13

              1.     The Board found that Choi disclosed element $M^2$
                     by teaching Mg and Al (pertinent to the '446
                     patent) ..................................................................... 14

              2.     The Board found that Choi discloses the molar
                     amount for $M^2$, which the claims require to be in
                     the range of $0.002 \leq z \leq 0.05$. ..................................... 17

       C.     The Board Denied Maxell's Requests for Rehearing. ......... 18

SUMMARY OF THE ARGUMENT ......................................................21

ARGUMENT ................................................................................28

I.      The Standard of Review ...............................................................28

II.     The Board Found Several Motivations to Combine Choi and
        Kim, Each of Which Is Supported by Substantial Evidence. ........................29

        A.      Substantial Evidence Supports the Board's Finding of a
                Motivation to Combine Choi and Kim to Improve
                Thermal Stability and Battery Discharge Characteristics. ..................29

        B.      Substantial Evidence Supports the Board's Finding of a
                Motivation to Combine Choi and Kim Based on Their
                Being in the Same Field and Using Similar Materials. .......................34

                1.      As the Board found, Choi and Kim use similar
                        cathode materials.......................................................35

                2.      As the Board found, Choi and Kim use similar
                        anode materials. ........................................................38

                3.      As the Board found, Choi and Kim use similar
                        nonaqueous solutions. ................................................40

        C.      Substantial Evidence Supports the Board's Finding of a
                Motivation to Combine Choi and Kim Based on a
                Motivation to Use Dinitrile Compounds Over
                Mononitrile Compounds. ...................................................41

III.    This Court Should Affirm the Board's Obviousness
        Determination Because Substantial Evidence Supports the
        Underlying Findings Regarding Using Mg and Al, and Using
        Them in the Claimed Concentration.............................................44

        A.      As the Board found, Choi expressly teaches using Mg
                and Al, and a POSITA would have found it obvious to
                use the elements that Choi says to use. ...............................45

x

B.    As the Board found, Choi's disclosed concentration
range ($0 \leq z \leq 0.5$) fully encompasses and renders obvious
the claimed concentration range ($0.002 \leq z \leq 0.05$)................................54

IV.    This Court Should Reject Maxell's Arguments Relying on
Evidence That Maxell Prefers But Which the Board Did Not
Accept or Find Credible. ................................................................61

CONCLUSION ..................................................................................62

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Applied Materials, Inc.*,
　692 F.3d 1289 (Fed. Cir. 2012) ...................................................57

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
　935 F.3d 1319 (Fed. Cir. 2019) ...................................................28

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
　406 F.3d 1365 (Fed. Cir. 2005) ...................................................52

*In re Burckel*,
　592 F.2d 1175 (CCPA 1979) ........................................................52

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
　381 F.3d 1371 (Fed. Cir. 2004) ...................................................33

*Cleo Inc. v. United States*,
　501 F.3d 1291 (Fed. Cir. 2007) ...................................................61

*CommScope Technologies LLC v. Dali Wireless Inc.*,
　10 F. 4th 1289 (Fed. Cir. 2021) ............................................36, 59

*Consol. Edison Co. v. NLRB*,
　305 U.S. 197 (1938)..........................................................28, 43, 61

*E.I. du Pont de Nemours & Co. v. Synvina C.V.*,
　904 F.3d 996 (Fed. Cir. 2018) .....................................................55

*Gen. Elec. Co. v. Raytheon Techs. Corp.*,
　983 F.3d 1334 (Fed. Cir. 2020) ...................................................28

*Genetics Institute, LLC v. Novartis Vaccines & Diagnostics, Inc.*,
　655 F.3d 1291 (Fed. Cir. 2011) ...................................................56

*In re Google Tech. Holdings LLC*,
　980 F.3d 858 (Fed. Cir. 2020) .....................................................59

*In re Harris*,
   409 F.3d 1339 (Fed. Cir. 2005) ....................................................26, 55

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
   977 F.3d 1212 (Fed. Cir. 2020) ...........................................................28

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) ...........................................................23

*In re Mills*,
   470 F.2d 649 (CCPA 1972) ...........................................................52, 53

*ModernaTx, Inc. v. Arbutus Biopharma Corp.*,
   18 F.4th 1364 (Fed. Cir. 2021) ............................................................59

*In re NTP, Inc.*,
   654 F.3d 1279 (Fed. Cir. 2011) ...........................................28, 43, 61

*In re Peterson*,
   315 F.3d 1325 (Fed. Cir. 2003) ...........................................................56

*Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*,
   975 F.2d 807 (Fed. Cir.1992) ...............................................................24

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a)(2), counsel for appellee Amperex Technology Limited ("Amperex") discloses that the following cases will directly affect or be directly affected by the Court's decision in this case:

- *Maxell, Ltd. v. Amperex Technology Limited*, No. 6:21-cv-00347-ADA (W.D. Tex.)

- *Amperex Technology Limited v. Maxell, Ltd.*, No. 6:21-cv-01007-ADA (W.D. Tex.)

- *Maxell, Ltd. v. Amperex Technology Limited*, No. 23-1194 (Fed. Cir.), originating from No. 6:21-cv-00347-ADA (W.D. Tex.) and No. 6-21-cv-01007-ADA (W.D. Tex.)

Counsel for Amperex is not aware of any other related cases within the meaning of Federal Circuit Rule 47.5.

## STATEMENT OF THE ISSUES

Appellee Amperex Technology Limited ("Amperex") disagrees with the Statement of the Issues in the principal brief of Appellant Maxell, Ltd. ("Maxell"). The appeal presents the following two issues:

1.    Does substantial evidence support the Board's factual finding—spanning twelve-plus pages of analysis in the Final Written Decision (Appx10-22)—that skilled artisans would have been motivated to combine the "Choi" and "Kim" prior art references, where, as the Board found, "a POSITA would have been motivated by a desire for increased thermal stability and improved discharge characteristics" (Appx10); Amperex presented "undisputed testimony that a POSITA 'would have understood that improving thermal stability is critical to improving battery safety'" (Appx11); "[t]he parties agree that both Choi and Kim are directed to improving thermal stability and discharge characteristics of a lithium battery" (*id.*); "Kim discloses the same types of cathode and anode active materials as Choi" (Appx12); "Kim teaches a similar nonaqueous electrolyte to Choi" (Appx13); Maxell "does not dispute that Choi and Kim both disclose lithium-containing transition metal oxides as cathode active materials" (Appx16); "a POSITA would have understood that [Choi's] thermal stability could be '*further* improved'" via Kim's addition of a dinitrile additive, where the expectation of further improvement was "supported by undisputed evidence" and was "conceded" by

1

Maxell's counsel at the oral hearing (Appx18 (emphasis in original)); and the Board extensively credited and relied on the testimony offered by Amperex's expert, Dr. van Schalkwijk, much of which was uncontroverted?

      2.     Does substantial evidence support the Board's factual finding that the combination of Choi and Kim discloses all limitations of the claims, where, as the Board found, it would have been obvious (for the claims of Maxell's '446 patent) to use both Mg and Al as expressly disclosed in Choi, and (for both the '446 patent and the '019 patent) to use these compounds in the claimed concentrations where "[it] is undisputed that Choi's disclosed range ($0 \leq z \leq 0.5$) encompasses the claimed range ($0.002 \leq z \leq 0.05$), which is sufficient to establish prima facie obviousness" (Appx29)?

**STATEMENT OF THE CASE**

## I.    Technology Background

This case relates to lithium-ion batteries.  Batteries have a positive electrode (cathode), a negative electrode (anode), a separator, an electrolyte that contains a salt of lithium, and a container.  Appx1919 ¶ 41.  The cathode can include a metal oxide, which commonly contains lithium atoms, metal atoms, and oxygen atoms (such as $LiCoO_2$ or $LiMn_2O_4$).  Appx1919 ¶¶ 42-43.

At the time when Maxell filed for the two patents at issue in this case, increasing battery capacity was a major driver of lithium-ion battery development because the applications for lithium-ion battery-containing products (such as notebook computers, cellular telephone, camcorders, and the like) were sharply increasing and were competing for longer runtimes.  Appx259; Appx2559-2560; Appx1985 ¶ 165.  Increasing capacity, however, was known to come at the expense of thermal stability.   Appx259; Appx2562; Appx2903; Appx1985-1986 ¶ 166.  Thus, it was known to substitute some of the central metal atoms (such as Co or Mn) with other atoms to impart desirable characteristics to the cathode and to enhance the performance of the battery in terms of both capacity and thermal stability.  Appx1919 ¶¶ 42-43.

## II.     The Challenged Maxell Patents

The '446 and '019 patents (the "Maxell patents") generally relate to lithium-ion secondary batteries using nonaqueous electrolytes. Appx90 at 1:45-48.[1] The patents explain that lithium-ion secondary batteries using lithium-containing transition metal oxides (e.g., $LiCoO_2$) as a positive electrode active material and using either metal lithium or a carbonaceous material (e.g., graphite) as a negative electrode active material were known ways to create such batteries. *Id.* at 1:45-67.

The Maxell patents noted that "many attempts have been made to add a different element to $LiCoO_2$." *Id.* at 2:1-2. The patents describe an alleged solution where the positive electrode active material includes certain other metal elements.[2] *Id.* at 2:56-61. The battery described and claimed in the Maxell patents includes a negative electrode and a nonaqueous electrolyte. Appx90 at 2:54-56. The nonaqueous electrolyte includes "a compound having at least two nitrile groups in the molecule." Appx91 at 2:61-62, 3:12-20.

Independent claim 1 of the '446 patent and independent claim 1 of the '019 patent are representative[3] of the claims at issue in this appeal. The relevant

---

[1] The '446 and '019 patents share a common specification. For ease of reference, citations herein are to the specification of the '446 patent.

[2] The claims of the Maxell patents require "at least **two** lithium-containing transition metal oxides." Appx103 at 28:39-40; Appx122 at 28:45-47.

[3] Maxell's arguments on appeal do not materially distinguish among the claims within the '446 patent or the claims within the '019 patent. *See* Blue Br. 16-18

limitations of representative Claim 1 of the '446 patent are provided below, with

emphasis supplied to the disputed terms:

> 1. A nonaqueous secondary battery comprising:
>
> . . .
>
> said lithium-containing transition metal oxide having the smallest average particle size is a lithium-containing transition metal oxide represented by the formula (1):
>
> $$Li_xM^1{}_y\mathbf{M^2}{}_zM^3{}_vO_2 \tag{1}$$
>
> wherein $M^1$ represents at least one transition metal element selected from Co, Ni and Mn, **$M^2$ represents Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn**, $M^3$ represents an element other than Li, $M^1$ and $M^2$, and x, y, **z** and v are numbers satisfying the equations respectively: $0.97 \leqq x < 1.02$, $0.8 \leqq y < 1.02$, **$0.002 \leqq z \leqq 0.05$**, and $0 \leqq v \leqq 0.05$,
>
> . . .
>
> the nonaqueous electrolyte contains a compound having at least two nitrile groups in the molecule.

Appx103 ('446 patent, claim 1).[4]

In the claims of the '446 patent, $M^2$ (which is part of the required lithium-

containing transition metal oxide) represents Mg "**and**" at least one metal element

selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn. In the claims of the

'019 patent, by comparison, $M^2$ can be simply Mg by itself "**or**" Mg and at least one

---

(quoting and thereafter focusing on only independent claim 1 of the two Maxell patents); *see also* Blue Br. 49 n.9 (explaining that Maxell's arguments apply equally to independent claim 3 of the '446 patent).

[4] All emphasis has been added unless indicated as being present in the original.

element selected from the provided group. In all the claims of both Maxell patents, the molar concentration "z" of $M^2$ is required to fall within the range "$0.002 \leqq z \leqq 0.05$." Appx103; Appx1022.

## III. The "Choi" and "Kim" Prior Art References

In separate Final Written Decisions, the Board found that all the claims of both Maxell patents were unpatentable as obvious based on the combination of Choi and Kim. Appx40; Appx84.

### A. Chinese Patent Publication No. CN1822414 ("Choi")

Choi discloses "lithium secondary batteries" having "high voltage stability, thermal stability and high rate discharge characteristics" and improved "volumetric capacity." Appx2173; Appx2179. Specifically, Choi confirms that by using "[t]he composite cathode active material according to the present invention . . . , it is possible to improve volume density, discharge capacity and high-rate discharge capacity." Appx2189. Choi also discloses a negative electrode and a nonaqueous electrolyte. Appx2181; Appx2183.

Choi teaches using at least two positive electrode active materials having different average particle sizes, according to the following formula:

$$Li_xCo_{1-y-z}Ni_yM_zO_{2-\alpha}X_\alpha \qquad \text{Formula 2}$$

. . .
where $0.90 \leq x \leq 1.1$, $0 \leq y \leq 0.9$, **$0 \leq z \leq 0.5$**, $0 \leq \alpha \leq 2$, M is at least one element selected from **Al**, Ni, Mn, Cr, Fe, **Mg**, Sr, V or rare earth elements, and X is selected from O, F, S and P.

6

Appx2174-2175.  Thus, Choi expressly discloses that the element "M" is **at least one** element selected from" a short list of elements that includes both Al and Mg (which fall within the claimed list of elements for $M^2$ in the Maxell patents).  Choi also makes clear that the total molar concentration "z" for the elements that comprise M is in the range of "$0 \leq z \leq 0.5$."  When providing exemplary embodiments of the small diameter active materials, Choi expressly teaches using Mg for M in a concentration "z" of 0.05, which Choi recites as the compound "$LiCo_{0.95}\mathbf{Mg_{0.05}}O_2$." Appx2179.  Choi also states that "any other compound with structure and thermal stability known in the art can also be used."  Appx2179.

### B. U.S. Patent Publication No. 2005/0208371 ("Kim")

Kim, like Choi, discloses a lithium secondary battery having improved thermal stability and discharge characteristics.  Specifically, Kim discloses a positive electrode having a positive electrode mixture layer (i.e., a cathode).  Appx2225 ¶ [0034].  Like Choi, Kim discloses a lithium-containing transition metal oxide ("LCTMO") as the positive electrode active material.  Appx2227-2228 ¶ [0069]. And like Choi, Kim discloses a negative electrode, or "anode."  Appx2225 ¶ [0035]. Kim also discloses incorporating a nonaqueous electrolyte solution (like Choi's) into a lithium secondary battery.  Appx2227 ¶ [0062].

Kim also discloses incorporating an aliphatic dinitrile compound (i.e., a compound having two nitrile groups), such as succinonitrile, into its electrolyte solution. Kim discloses:

> In the present invention, a compound for forming a complex on the cathode surface is an aliphatic nit[r]ile compound. Examples of the aliphatic nitrile compound include compounds represented by the following formula 1:

(Formula 1)

$$N \equiv C \diagup \overset{R}{\diagdown} C \equiv N$$

> wherein R represents an alkane group having 1-15 carbon atoms.

Appx2225 ¶¶ [0037]-[0038]. Kim describes the benefits of its aliphatic nitrile compounds when used with LCTMO cathode active materials as follows:

> The present inventors have found that, when a protection layer is formed on a cathode by complexation between the surface of a cathode active material and an aliphatic nitrile compound, such as succinonitrile, **the safety of a battery upon overcharge and/or physical impact (e.g., high temperature exposure by heating) from the outside of the battery can be improved**. The present invention is based on this finding.

Appx2225 ¶ [0032]. Kim elaborates, describing in detail how its aliphatic dinitrile compounds interact with LCTMO cathode active materials to improve the thermal stability and safety of lithium-ion batteries by inhibiting the side reaction and gas generation between such cathodes and the electrolyte solution, thereby reducing the

risk of thermal runaway,[5] "preventing a reduction in the cycle life characteristics of the battery," "provid[ing] a thermally stable electrode," "control[ling] exothermic heat," and "prevent[ing] fire and explosion of the battery." Appx2225-2226 ¶¶ [0041]-[0042].

## IV. The Board's Final Written Decisions Finding the Maxell Patent Claims Unpatentable

Amperex filed separate petitions for *inter partes* review challenging all claims in both Maxell patents. Appx128; Appx131.[6] The Board issued two Final Written Decisions finding all claims unpatentable as obvious based on the combination of Choi and Kim. Appx40; Appx84. Pertinent to the issues presented by Maxell on appeal, the Board found (1) a motivation to combine Choi and Kim, and (2) "that Choi discloses a nonaqueous secondary battery including all limitations of the challenged claims, except for the limitation 'the nonaqueous electrolyte contains a compound having at least two nitrile groups in the molecule,' which the Board found is disclosed by Kim." Blue Br. 22.

---

[5] "Thermal runaway" is a catastrophic failure in batteries that can result in fire or explosion when, "[a]t a critical temperature, a chain of exothermic reactions can be triggered, and the cell will undergo rapid self-heating. If the cell is not designed to adequately dissipate the heat generated, it will catastrophically fail." Appx1926 ¶ 64.

[6] Because the two IPRs involved nearly identical records, both Maxell and Amperex have cited only from the IPR2021-01440 record. Blue Br. 19.

Because the combination of Choi and Kim rendered all claims unpatentable, the Board did not reach Amperex's alternative grounds for unpatentability.  Appx40 n.19; Appx84 n.19.

### A. The Board Found That a POSITA Would Have Been Motivated to Combine Choi and Kim.

The Board found that a person of ordinary skill in the art ("POSITA") would have been motivated to combine the teachings of Choi and Kim by including in Choi's electrolyte solution a dinitrile compound as taught by Kim.  Appx10; Appx52.  The Board identified at least three independent reasons why a POSITA would have been motivated to combine Choi and Kim.  Each of the Board's reasons is summarized in more detail below.

**First**, the Board found that a POSITA would have been motivated to combine Choi and Kim due to a desire for increased thermal stability and improved discharge characteristics.  Appx10; Appx53.  The Board credited Amperex's "undisputed testimony that a POSITA 'would have understood that improving thermal stability is critical to improving battery safety.'"  Appx11; Appx53.  The Board further relied on "[t]he parties' agree[ment] that both Choi and Kim are directed to improving thermal stability and discharge characteristics of a lithium battery" and "teach different ways to improve thermal stability."  *Id.*; *see also* Appx18 ("An expectation of further improvement [in thermal stability] is supported by undisputed evidence that Kim's aliphatic dinitrile compound confers thermal stability by a ***different***

*mechanism* than Choi's complex lithium-containing transition metal oxides." (emphasis in original)).  Relying on Kim's disclosures and testimony by Amperex's expert, Dr. van Schalkwijk, the Board found that "Kim teaches that the addition of a dinitrile compound to the electrolyte improves thermal stability and discharge characteristics so as to avoid thermal runaway."  *See* Appx13-14; Appx55-57.

The Board rejected Maxell's arguments that a POSITA would not have been motivated to combine Choi and Kim because, according to Maxell, they disclosed "starkly contrasting technologies" in that Choi disclosed "complex" lithium-containing transition metal oxides while Kim did not.  Appx15; Appx57.  The Board found that Maxell's expert testimony was "not sufficient to rebut" Amperex's expert testimony.  Appx16; Appx58.  The Board also noted that Maxell conceded it was not arguing that there would be a different result "when combining a dinitrile (or mononitrile) compound with a 'complex' cathode material."  Appx17; Appx59.  No evidence undermined the testimony by Amperex's expert (Dr. van Schalkwijk) that "a POSITA would have been motivated to include an aliphatic nitrile in the electrolyte to increase the thermal stability and improve the discharge characteristics of Choi's battery and would have expected that the electrolyte additive would have been effective."  Appx17; Appx59-60.

The Board also rejected Maxell's argument that there was no motivation to combine because, according to Maxell, Choi "already" addressed thermal stability.

Appx18; Appx60.  The Board found that a POSITA would have understood that thermal stability could be further improved to higher temperatures and would have been motivated to make that improvement to improve battery safety.  Appx18; Appx60.  The Board credited the testimony of Amperex's expert, who explained that a "person of ordinary skill will seek out a cathode that would provide as much of that [(thermal stability)] as possible," and "[t]hermally stable can always be improved to be stable to a higher temperature."  Appx19; Appx61.

**Second**, relying on the testimony of Amperex's expert and the Choi and Kim references themselves, the Board found that the references disclosed the same types of cathode and anode active materials, namely "lithium-cobalt-based oxide cathode active materials and carbon (or graphite) anode active materials" (Appx12; Appx54), and that the references teach "a similar nonaqueous electrolyte" (Appx13; Appx55). Indeed, Maxell did "not dispute that Choi and Kim both disclose lithium-containing transition metal oxides as cathode active materials."  Appx16; Appx58.  The Board added that Kim identified "limitations of these cathode and anode active materials, including gas generation at high temperatures, which may result in thermal runaway."  Appx12; Appx55.  The Board found that, because of the similarities between the two references' materials, a POSITA would have reasonably expected the chemical reaction and advantages described in Kim to operate in substantially the same way when Kim's aliphatic dinitrile electrolyte additive encountered Choi's

12

substantially similar cathode materials, and would have expected success and further improvement when making the combination. Appx16-17.

**Third,** the Board found that a POSITA would have been motivated to use a dinitrile compound (as taught by Kim) with Choi's lithium-ion battery because expert testimony and corroborating evidence confirmed that a POSITA would have known that dinitrile compounds like Kim's offer additional benefits beyond the mononitrile compounds used in Choi's electrolyte solution. Appx20; Appx62. In so finding, the Board credited the testimony of Amperex's expert, Dr. van Schalkwijk, who identified multiple reasons why a POSITA would have been motivated to use a dinitrile compound (like Kim's) over a mononitrile compound. Appx21; Appx63. The Board further found that Dr. van Schalkwijk's testimony was corroborated by and consistent with a prior art patent publication called "Abe" (US 2004/0013946). Appx21-22. Abe compared testing of dinitrile compounds and mononitrile compounds and explained that using dinitrile compounds offered favorable effects. Appx21-22; Appx64; Appx2286-2287 ¶ 108, Tables 1-2.

### B. The Board Found That Choi Disclosed All Elements Except the Dinitrile Compound, Which Kim Disclosed.

Claim 1 of each of the '446 and '019 patents requires a lithium-containing transition metal oxide represented by the formula: $Li_xM^1_yM^2_zM^3_vO_2$. During the IPRs, Maxell argued that Choi did not disclose three aspects of this formula: (1) the required (for the '446 patent) presence of Mg and another element to satisfy $M^2$; (2)

the molar concentration "z" of $M^2$; and (3) an element that satisfies $M^3$.  Appx22; Appx65.  The Board rejected each of these arguments.  In this appeal, Maxell asserts only the first two issues, not the third.  Thus, this overview of the Board's findings focuses on only the first two issues.

### 1.  The Board found that Choi disclosed element $M^2$ by teaching Mg and Al (pertinent to the '446 patent).

For the '019 patent, the Board noted that Maxell "does not dispute [Amperex]'s evidence that a POSITA would have selected Mg, or Mg and Al, from the elements Choi teaches for M."  Appx69.  Maxell acknowledged that Choi expressly discloses both Mg and Al as possible constituents of a cathode active material, and the claims of the '019 patent optionally allow $M^2$ to be Mg alone.  *Id*. In this appeal, Maxell does not challenge whether Choi discloses $M^2$ for purposes of the '019 patent claims.  But Maxell does challenge the sufficiency of Choi's disclosure of $M^2$ for the '446 patent claims.  Thus, the discussion below focuses on the Board's findings for the '446 patent.

For the '446 patent, the Board considered whether Choi discloses the claim requirement that $M^2$ represents "Mg and at least one metal element selected from the group consisting of Ti, Zr, Ge, Nb, Al and Sn."  Appx23.  The Board found that "[Maxell] does not dispute [Amperex's] evidence that a POSITA would have selected Mg and Al from the elements Choi teaches for M."  *Id*.  Instead, the Board explained, Maxell argued that in Choi's Formula 2, "M isn't required at all," and

that Mg and Al are just "one pair of elements out of a possible 600 pairs of elements from Choi's list of 25 possible elements." Appx27 ("referring to Choi's list of eight elements plus seventeen rare earth elements that are options for M").

The Board rejected Maxell's arguments. The Board explained that "[t]here is no dispute that Choi discloses Mg and Al as possible constituents of a cathode active material." Appx23. Crediting the declaration and deposition testimony of Amperex's expert, the Board similarly noted:

> Undisputed evidence shows that a POSITA would have had several reasons to select Mg and Al from the options Choi discloses for element M. These undisputed reasons include: (1) that Mg would enhance the cathode material's electronic conductivity; (2) that Al would provide structural enhancement to the cathode; (3) that Mg and Al would be less likely to disrupt the structure of the cathode material because they are the smallest elements in Choi's list; and (4) that Mg and Al would not be oxidized or reduced because they each have singular oxidation states.

Appx23-24.

Finding that a POSITA "would have understood that the inclusion of Mg and Al would provide benefits and enhancements to the cathode," the Board "credit[ed] Dr. van Schalkwijk's unrebutted testimony that a POSITA 'would have understood that including Mg would increase the electronic conductivity of the material, alter the phase transition behavior of the delithiation process, and increase the charge voltage available to the cathode' and 'including an additional dopant such as Al would provide structural enhancements to the cathode.'" Appx30.

The Board also found that Amperex's expert testimony was supported by corroborating references, including "Tukamoto" and "Madhavi." Appx25-26; Appx30. The Board explained that Tukamoto discloses that "Mg doping of $LiCoO_2$ can significantly increase its conductivity without degrading electrochemical performance, with only a small reduction in capacity and good reversibility." Appx25-26. Similarly, the Board explained that Madhavi discloses that "doping $LiNi_{0.7}Co_{0.3}O_2$ with Mg and Al improves reversibility, capacity retention, and thermal stability, as compared to undoped cathode material." Appx26. Thus, the Board found that "using both Mg and Al as dopants provides additional benefits over using one element alone." *Id.*

The Board weighed this evidence against contrary testimony provided by Maxell's expert. But as the Board observed, Maxell's expert "Dr. Lucht does not controvert Dr. van Schalkwijk's testimony that the small size and singular oxidation states of Mg and Al would have prompted a POSITA to select these elements from Choi's list of options for M." Appx27. The Board also found that "Dr. Lucht agrees that size and oxidation state of a dopant should be similar to the size of the other metals." *Id.*

For these reasons and more, the Board found that Amperex met its burden of proof relating to the prior-art disclosure of $M^2$ in the claims of the '446 patent.

**2. The Board found that Choi discloses the molar amount for $M^2$, which the claims require to be in the range of $0.002 \le z \le 0.05$.**

For both the '019 and '446 patents, the Board considered whether Choi discloses a molar amount of $M^2$ (called "z" in both the Maxell patents and in Choi) that falls within the claimed range of $0.002 \le z \le 0.05$. Appx29; Appx71. The Board noted, as an initial matter, that Choi expressly discloses a range for "z" of "$0 \le z \le 0.5$," which was "undisputed" to fully encompass the claimed range ($0.002 \le z \le 0.05$), thus establishing a prima facie case of obviousness. Appx29; Appx72. The Board added that it was "undisputed that Choi discloses a specific cathode active material containing an amount of Mg within the claimed range." Appx30; Appx72.

Next, the Board found that "[u]ndisputed evidence establishes that a POSITA would have understood that the concentration of Mg and Al [for the '446 patent, or 'Mg[] or Mg and Al' for the '019 patent] in the cathode active material is a result-effective variable, and the optimum range of Mg and Al [or 'Mg[] or Mg and Al' for the '019 patent] concentration would have been discovered by a POSITA by routine experimentation." Appx30; Appx73; *see also* Appx33; Appx76. The Board credited Amperex's expert's "unrebutted testimony that a POSITA would have used the smallest amount of Mg and Al possible to stabilize the structure." Appx31; Appx73.

The Board also relied on Amperex's expert's testimony about three corroborating prior art references, "Tukamoto" (which indicates "that, of the three cathode compositions, the one with the lowest Mg content [i.e. 0.01] . . . had the best

17

discharge characteristics," Appx31-32; Appx73-74), "Sato" (which discloses "a cathode active material of the formula $Li_{1.00}CoAl_{0.015}Mg_{0.015}O_2$, which Sato teaches has optimum capacity retention and initial capacity and which has a molar amount [i.e. 0.03] of Mg and Al ($M^2$) falling within the claimed range," Appx32; Appx74-75), and "Watanabe" (which discloses "cathode active materials of the formula $Li_xCo_{1-y}M_yO_2$, where element M is preferably at least one of Mg, Al, and Mn, and x and y fall within the ranges $1.0 \leq x \leq 1.03$ and **$0.005 \leq y \leq 0.15$**," Appx32; Appx75).

Finally, the Board rejected Maxell's argument that because Choi's disclosed range for "z" (the molar amount of $M^2$) is broader than the claimed range, a POSITA would not have had sufficient reason to select an amount of $M^2$ within the claimed range. Appx33; Appx75. The Board disagreed with Maxell, as "unrebutted evidence . . . demonstrate[d] that a POSITA would have known to use as small an amount of Mg and Al as necessary to stabilize the structure without substantively interfering with the electrochemical reaction and also would have understood that amounts within the claimed range would provide these beneficial results." Appx34; Appx76.

### C. The Board Denied Maxell's Requests for Rehearing.

Maxell filed requests for rehearing of both Final Written Decisions. Maxell argued (1) that the Board misapprehended the differences between Choi and Kim when considering the motivation to combine their teachings, and (2) that the Board

misapprehended the obviousness standard or the evidence when finding that Choi

discloses element $M^2$ and its molar amount.  Appx829-838; Appx4105-4114.  The

Board denied both rehearing requests.

In rejecting Maxell's argument that the Board misapprehended the differences

between Choi and Kim when considering motivation to combine, the Board

explained that Maxell failed to identify any new argument not already addressed in

the Final Written Decisions.  Appx842-843; Appx4118-4119.  The Board then

emphasized that its decisions found that "a POSITA would have been motivated by

a desire for increased thermal stability and improved discharge characteristics."

Appx844; Appx4120.

In rejecting Maxell's argument that Choi does not disclose $M^2$ and its molar

amount "z," the Board noted that Maxell improperly presented new arguments in its

rehearing requests.  Appx845; Appx4121.  Nevertheless, addressing the argument

anyway, the Board found that Maxell failed to "produce evidence of non-

obviousness of the claimed range" of "z" for the reasons the Board already explained

in its Final Written Decisions.  *Id.*  The Board also rejected Maxell's "new

arguments" that Choi fails to disclose the required presence of Mg (or Mg and Al)

in the claimed molar concentration, explaining that the additional deposition

testimony cited by Maxell was not cited in any of its briefs, and "does not refute

[Amperex]'s evidence that a POSITA would have selected Mg and Al from the elements Choi teaches for M."  Appx845; Appx4121.

# SUMMARY OF THE ARGUMENT

This appeal concerns IPR proceedings initiated by Amperex and directed to two Maxell patents relating to the materials used in rechargeable batteries. The patents purport to identify improvements in the materials used in the positive electrodes and electrolytes of such batteries. The Board issued two substantively identical Final Written Decisions finding all the claims in both patents unpatentable as obvious over the combination of two prior art references, Choi and Kim. Because that ground of obviousness resolved the question of unpatentability, the Board did not reach Amperex's remaining challenges.

Maxell's appeal presents only two issues, and both involve factual questions that this Court reviews for substantial evidence. The first is whether a POSITA would have been motivated to combine Choi and Kim. The second is whether a POSITA would have found it obvious to use (for the '446 patent) the elements Mg and Al in the cathode, and (for both the '446 patent and the '019 patent) to use the elements in the claimed concentration.

Substantial evidence—including evidence that the Board found to be "undisputed," "agreed," or "not controverted" by Maxell—supports the Board's findings. For example, the Board found the following:

- "[Amperex] presents **undisputed testimony** that a POSITA would have understood that improving thermal stability is critical to improving battery safety." Appx11.

21

- "The **parties agree** that both Choi and Kim are directed to improving thermal stability and discharge characteristics of a lithium battery." *Id.*

- "Furthermore, the **parties agree** that Choi and Kim teach different ways to improve thermal stability." *Id.*; *see also* Appx18 ("An expectation of further improvement [in thermal stability] is supported by **undisputed evidence** that Kim's aliphatic dinitrile compound confers thermal stability by a ***different mechanism*** than Choi's complex lithium-containing transition metal oxides." (second emphasis in original)).

- "[Maxell] **does not dispute** that Choi and Kim both disclose lithium-containing transition metal oxides as cathode active materials." Appx16.

- "At the oral hearing, [Maxell]'s counsel **conceded** that [Maxell] is not arguing that the result would be different when combining a dinitrile (or mononitrile) compound with a 'complex' cathode material [as Maxell argued Choi's to be], as compared with a 'basic' cathode material [as Maxell argued Kim's to be]." Appx17.

- "At the oral hearing, [Maxell]'s counsel **conceded**, 'I don't believe there is anything in the record to say that thermal stability could not have been further improved' by a dinitrile compound in the electrolyte when using a complex cathode material as disclosed in Choi." Appx18.

- "There is **no dispute** that Choi discloses Mg and Al as possible constituents of a cathode active material." Appx23.

- "**Undisputed evidence** shows that a POSITA would have had several reasons to select Mg and Al from the options Choi discloses for element M. These **undisputed** reasons include: (1) that Mg would enhance the cathode material's electronic conductivity; (2) that Al would provide structural enhancement to the cathode; (3) that Mg and Al would be less likely to disrupt the structure of the cathode material because they are the smallest elements in Choi's list; and (4) that Mg and Al would not be oxidized or reduced because they each have singular oxidation states." Appx23-24.

- "[Maxell] **does not dispute** [Amperex]'s evidence that a POSITA would have selected Mg and Al from the elements Choi teaches for M." Appx27; *see also* Appx28 ("[W]e find that [Amperex] and Dr. van Schalkwijk . . . rely on **undisputed evidence** from before the foreign priority

date of the '446 patent showing that a POSITA would have had multiple reasons to select Mg and Al from the elements Choi teaches for M.").

• Maxell's expert "Dr. Lucht **does not controvert** Dr. van Schalkwijk's testimony [for Amperex] that the small size and singular oxidation states of Mg and Al would have prompted a POSITA to select these elements from Choi's list of options for M. Dr. Lucht **agrees** that size and oxidation state of a dopant are considerations when developing a lithium-ion battery." Appx27 (citations omitted).

• "It is **undisputed** that Choi's disclosed [concentration] range ($0 \le z \le 0.5$) encompasses the claimed range ($0.002 \le z \le 0.05$), which is sufficient to support prima facie obviousness." Appx29.

• "It is also **undisputed** that Choi discloses a specific cathode active material containing an amount of Mg within the claimed range." Appx30.

• "**Undisputed evidence** establishes that a POSITA would have understood that the concentration of Mg and Al in the cathode active material is a result-effective variable, and the optimum range of Mg and Al concentration would have been discovered by a POSITA by routine experimentation." Appx30; *see also* Appx33 ("[Maxell] **does not dispute** [Amperex's] evidence that a POSITA would have understood that that the concentration of Mg and Al in the cathode active material is a result-effective variable that would have been optimized through routine experimentation.").

The Board also considered both parties' expert testimony and repeatedly credited the testimony from Amperex's expert, either as unrebutted testimony or as testimony that the Board found more credible than that from Maxell's expert. *See, e.g.*, Appx12-17; Appx19; Appx21-22; Appx24-27; Appx30-32; Appx36-37; *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002) ("[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's

decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence").

The wealth of evidence that was credited, undisputed, agreed, or not controverted—not to mention the clear disclosures in the Choi and Kim references themselves—warrant affirmance under the applicable "substantial evidence" standard of review. Maxell's brief acknowledges the standard of review but in substance asks this Court to reweigh the evidence and reach a different conclusion. That is not this Court's role, nor would such a reweighing support a different conclusion in any event. *See, e.g.*, *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992). As summarized below, substantial evidence supports the Board's findings on both issues raised by Maxell in this appeal.

**First**, substantial evidence supports the Board's finding that a POSITA would have been motivated to combine Choi and Kim. Three independent reasons support affirming the Board's decision. First, the Board found that "a desire for increased thermal stability and improved discharge characteristics would have motivated a POSITA to modify the electrolyte in Choi's battery by including a dinitrile compound as taught by Kim." Appx10-14. Second, the Board found that Kim and Choi disclosed the "the same types of cathode and anode active materials" and "similar nonaqueous electrolyte" solutions, and the similarities between the two

24

references' components confirmed Dr. van Schalkwijk's testimony that a POSITA would have expected success in combining the references. Appx12-13; Appx15-17. Third, the Board found that a POSITA would have been motivated to use a dinitrile additive (like Kim's) with Choi's lithium-ion battery because expert testimony and corroborating evidence confirmed that a POSITA would have known that dinitrile additives like Kim's offer additional benefits beyond the mononitrile additives already included in Choi's electrolyte solution. Appx12-17.

**Second**, substantial evidence supports the Board's finding that Choi expressly discloses using both Mg and Al, and that a POSITA would have found it obvious to select both Mg and Al (for the '446 patent claims) from the list of elements that Choi expressly says to use.[7] The '446 patent claims require that the cathode include a lithium-containing transition metal oxide (called "$M^2$" in the claims), where $M^2$ represents "**Mg and at least one** metal element selected from the group consisting of Ti, Zr, Ge, Nb, **Al** and Sn" in a molar concentration "z" that falls within the claimed range of "$0.002 \leq z \leq 0.05$."

The Board found that Choi teaches an active cathode material that meets these limitations. Appx23-29. Choi teaches a lithium-containing transition metal oxide

___

[7] The claims of Maxell's other patent, the '019 patent, allow use of Mg alone. Maxell does not dispute that Choi expressly discloses using Mg alone. For example, Choi expressly teaches using Mg in a concentration of 0.05 in an embodiment using $LiCo_{0.95}Mg_{0.05}O_2$. Appx2179.

with M, where M is "**at least one** element selected from **Al**, Ni, Mn, Cr, Fe, **Mg**, Sr, V or rare earth elements." Appx2174-2175. Choi's disclosure therefore teaches using both Mg and Al. Choi also teaches to use them in a molar concentration range "z" of "$0 \leq z \leq 0.5$," which fully encompasses the range claimed in both patents of "$0.002 \leq z \leq 0.05$." Appx2174-2175.

In finding that a POSITA would have found it obvious to use both Mg and Al, as expressly taught by Choi, the Board relied on Choi's disclosures, extensive (and often undisputed) testimony from Dr. van Schalkwijk, and corroborating documents from before the priority date of the Maxell patents. Appx23-29. The evidence collectively confirmed that a POSITA would have found it obvious to use both Mg and Al in particular (from among the candidate elements identified by Choi), for a host of undisputed technical reasons. Appx23-29.

Furthermore, substantial evidence supports the Board's related finding that a POSITA would have found it obvious to use Mg (for the '019 patent) or Mg and Al (for the '446 patent) in a molar concentration "z" that falls within the claimed range of "$0.002 \leq z \leq 0.05$." As the Board found, Choi expressly disclosed a range "z" of "$0 \leq z \leq 0.5$," which fully encompasses the claimed range and thus establishes a presumption of obviousness. Appx29-30; *see, e.g.*, *In re Harris*, 409 F.3d 1339 (Fed. Cir. 2005) ("a prima facie case of obviousness arises when the ranges of a claimed composition overlap the ranges disclosed in the prior art"). The Board also

correctly found that the concentration "z" is a result-effective variable, and that Maxell failed to come forward with any evidence of teaching away, unexpected results, or criticality, or any other pertinent objective indicia indicating that the overlapping range would not have been obvious.  Appx33-35.

This Court should affirm the Board's Final Written Decisions in their entirety.

# ARGUMENT

## I.    The Standard of Review

Maxell's appeal challenges two factual findings by the Board.  This Court reviews the Board's factual findings for substantial evidence.  *Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1345 (Fed. Cir. 2020).  First, the Board's finding regarding a motivation to combine Choi and Kim is a question of fact that this Court reviews for substantial evidence.  *Arthrex, Inc. v. Smith & Nephew, Inc.*, 935 F.3d 1319, 1328 (Fed. Cir. 2019)).  Second, the Board's findings underlying its obviousness determination—here, whether a POSITA would have been motivated to select Mg and Al from Choi's express list of possible elements, and to use a particular concentration for the elements—are also questions of fact that this Court reviews for substantial evidence.  *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1218 (Fed. Cir. 2020).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings."  *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011).

**II.    The Board Found Several Motivations to Combine Choi and Kim, Each of Which Is Supported by Substantial Evidence.**

The Board correctly found that there were at least three independent motivations to combine the teachings of Choi and Kim.  In so finding, the Board did far more than, as Maxell implies, conclude that these two references merely fall within the same field of art and are directed to the same broad goals of "building a better battery" or "further improvement"—although even those two findings on their own would be enough to support the Board's conclusion.  Blue Br. 31-33.  Instead, the Board agreed with Amperex and its expert that there were specific technical motivations to make the combination.

Three independent reasons support the Board's finding of a motivation to combine Choi and Kim, and substantial evidence supports all three.  This Court can affirm based on any of the three reasons.  Each is addressed below.

**A. Substantial Evidence Supports the Board's Finding of a Motivation to Combine Choi and Kim to Improve Thermal Stability and Battery Discharge Characteristics.**

The Board correctly found that Amperex showed "persuasively that a desire for increased thermal stability and improved discharge characteristics would have motivated a POSITA to modify the electrolyte in Choi's battery by including a dinitrile compound as taught by Kim."   Appx10-14 (citing Appx261-263; Appx1968-74 ¶¶ 140-146).  In reaching this finding, the Board relied collectively on Choi's and Kim's own teachings, Dr. van Schalkwijk's testimony, the lack of

rebuttal evidence from Dr. Lucht, and Maxell's statements at the oral hearing. *Id.* (citing Appx2174-2175; Appx2177; Appx2179 (Choi); Appx2213-2214 at Abstract, Figs. 1-2; Appx2225-2228 ¶¶ 32, 33, 37-42, 69 (Kim); Appx1969-1974 ¶¶ 141-142, 144-146 (Dr. van Schalkwijk's testimony); Appx443 (Maxell's Response); Appx3369 ¶¶ 35-36 (Dr. Lucht's declaration testimony); Appx3465 at 37:18-40:3 (Dr. van Schalkwijk's deposition testimony); Appx411 (Institution Decision); Appx792 at 32:7-20 (hearing transcript)).

To begin, the Board relied on the fact that "[t]he parties agree that both Choi and Kim are directed to improving thermal stability and discharge characteristics of a lithium battery." Appx11. The Board also relied on Choi's and Kim's own disclosures stating as much. *Id.* (citing Appx2174; Appx2224-25 ¶¶ 8, 12, 32, 33). The Board also relied on "**undisputed** testimony" from Dr. van Schalkwijk that "a POSITA would have understood that improving thermal stability is critical to improving battery safety." Appx11 (citing Appx1969 ¶ 141).

As for the references themselves, the Board found (and Maxell does not dispute) that "the parties **agree** that Choi and Kim teach different ways to improve thermal stability," citing testimony from both parties' experts. Appx11; *see also* Appx11-12 (citing Appx1969-73 ¶¶ 141--144 (Dr. van Schalkwijk's testimony); Appx3450-3451 ¶¶ 10-11 (Dr. Lucht's testimony); Appx445 (Maxell's Response)); Appx18 ("An expectation of further improvement [in thermal stability] is supported

by **undisputed evidence** that Kim's aliphatic dinitrile compound confers thermal stability by a ***different mechanism*** than Choi's complex lithium-containing transition metal oxides." (second emphasis in original)).  While Choi teaches that a battery's thermal stability can be improved by using complex lithium-containing transition metal oxides enhanced with dopants, Kim teaches that thermal stability and discharge characteristics can be improved by adding a dinitrile compound to the electrolyte (to avoid thermal runaway).  Appx11; Appx13; Appx2225-2226 ¶¶ [0032], [0037], [0041], [0042].

Choi itself teaches that its cathode active materials provide "high voltage stability, thermal stability and high rate discharge characteristics" and improve "volumetric capacity."  Appx2173; Appx2179; Appx1969 ¶ 141.  Kim, which discloses the same general types of cathode and anode materials as Choi, identifies limitations in those cathode and anode active materials, including gas generation at high temperatures, which may result in thermal runaway.  Appx2173-2181 (Choi); Appx2224 ¶¶ [0002]-[0010]; Appx2227-2228 ¶¶ [0069]-[0072] (Kim); Appx1970 ¶ 142 (Dr. van Schalkwijk's testimony).  Kim's inventors found that "when a protection layer is formed on a cathode by complexation between the surface of a cathode active material and an aliphatic nitrile compound, such as succinonitrile, the safety of a battery upon overcharge and/or physical impact (e.g., high temperature exposure by heating) from the outside of the battery can be improved."  Appx2225

¶ [0032]; *see also* Appx2225-2226 ¶¶ [0041]-[0042] (explaining the physical process that results in this improvement and the technical and safety advantages, including preventing fire or explosion of the battery due to the acceleration of combustion and the generation of thermal runaway). In reaching these conclusions, the Board relied on evidence that a POSITA would have recognized that one could achieve additional benefits to Choi's invention by using electrolyte additives (like Kim's), including benefits that Kim taught such as inhibiting the side reaction and gas generation by a reaction between the electrolyte solution and the cathode, which was not addressed by Choi's cathode material. Appx15-17.

The Board also agreed with Amperex that Kim identifies the limitations of the cathode and anode active materials used by both Choi and Kim (including gas generation at high temperatures, which may result in thermal runaway), and that a POSITA would have been motivated to apply Kim's teaching that adding a dinitrile compound to the electrolyte to a battery like Choi's would improve the battery's thermal stability and discharge characteristics (to avoid thermal runaway). Appx12-17 (citing Appx262 (Amperex's Petition); Appx1970-1974 ¶¶ 142-146 (Dr. van Schalkwijk's testimony); Appx2225-2226 ¶¶ [0032], [0037], [0041], [0042] (Kim).) The Board also credited Dr. Schalkwijk's testimony that a POSITA:

> would have been motivated to improve the properties and benefits of the Choi battery by including the electrolyte additive of Kim to increase thermal stability and improve discharge characteristics in the resultant batteries.

32

Appx14 (citing Appx1973 ¶ 145); *see also* Appx12-17; Appx2224-2228 ¶¶ [0002]-[0009], [0032], [0037], [0041], [0042], [0069], [0072] (Kim); Appx1970-1974 ¶¶ 142-146 (additional testimony).

The Board was unpersuaded by any perceived differences in Choi's and Kim's cathode materials. Maxell's expert, Dr. Lucht, did not present any testimony or evidence that Kim's teachings about an aliphatic nitrile compound would not apply to Choi's cathode materials. Appx15-17. The Board noted that both Choi and Kim teach the same types of cathode and anode materials, and they teach different ways to improve thermal stability. *Id.*

The Board's well-supported motivation to combine distinguishes the decisions here from that in *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371 (Fed. Cir. 2004), relied on by Maxwell. In *Cardiac Pacemakers*, this Court reversed a Board decision because the prior art merely recognized a problem to be solved. This Court explained that "[r]ecognition of the problem . . . does not render obvious the eventual solution," and "[r]ecognition of a need does not render obvious the achievement that meets that need." *Id.* at 1377. Here, by comparison, the Board relied on specific technical **solutions** that reduce thermal runaway via improved thermal stability and battery discharge characteristics.

Lastly, the Board considered and disagreed with Maxell's contention that Choi's improved thermal stability would undermine the motivation to combine it

with Kim to **further** improve that characteristic.  Appx18-20.  At the oral hearing, the Board aptly summarized Maxell's argument to mean that once Choi made "some improvement" there would be "no motivation from that point onward to make any further improvement."  Appx788-789.  The Board observed that Maxell's argument "doesn't seem particularly logical."  Appx789.[8]  In the Final Written Decisions, the Board recounted Maxell's concession at the oral hearing, explaining that "[Maxell]'s counsel conceded, 'I don't believe there is anything in the record to say that thermal stability could not have been further improved.'"  Appx18 (quoting Appx788 at 28:2-3).  The Board then detailed the many reasons why "[a]n expectation of further improvement is supported by **undisputed evidence**" (Appx18) including testimony from Amperex's expert.  *See* Appx18-20.  Substantial evidence supports the Board's finding of a motivation to combine based on the need for improved thermal stability and battery discharge characteristics.

### B. Substantial Evidence Supports the Board's Finding of a Motivation to Combine Choi and Kim Based on Their Being in the Same Field and Using Similar Materials.

The Board found that Amperex showed "persuasively that Kim discloses the same types of cathode and anode active materials as Choi" and that "Kim teaches a

---

[8] Maxell's argument can be analogized to an argument that because a computer processor was developed to be faster than prior processors, a POSITA would not have been motivated to develop a still-faster processor.  Like Maxell's argument here, such a notion is not "particularly logical."  Appx789.

similar nonaqueous electrolyte to Choi." Appx12-13 (citing Appx2173-2181; Appx2183 (Choi); Appx2224-2228 ¶¶ [0002]-[0010], [0062]-[0063], [0069]-[0073] (Kim); Appx1970-1971 ¶¶ 142-143 (Dr. van Schalkwijk's testimony)). And the parties agree that Choi and Kim are in the same field. *E.g.*, Blue Br. 27 (noting "that Choi and Kim are in the same field of art"). That Choi and Kim are in the same field and use similar cathode materials, anode materials, and nonaqueous electrolytes reinforces the Board's finding of a motivation to combine.

### 1. As the Board found, Choi and Kim use similar cathode materials.

Regarding the cathode materials, the Board found that "[Maxell] does not dispute that Choi and Kim both disclose lithium-containing transition metal oxides as cathode active materials." Appx16. The Board also found that Amperex had established a motivation to combine Choi and Kim despite any differences in their cathode materials, and that a POSITA would have expected success in combining Kim's dinitrile additive with Choi's materials. Appx12-17.

The Board correctly found, based on Choi's and Kim's disclosures as well as Dr. van Schalkwijk's testimony, that Choi's and Kim's lithium-ion batteries ***both*** teach lithium-containing transition metal oxides ("LCTMOs") as cathode active materials. Appx15-17; Appx57-60; Appx2177; Appx2179 (Choi); Appx2227-2228 ¶ [0069] (Kim); *see also* Appx1970 ¶ 142 ("Kim . . . teaches the same types of cathode and anode materials as Choi."). Maxell did not, and does not, dispute this

fact. Blue Br. 44-45; Appx15; Appx57. Kim teaches that its invention can overcome the limitations of LCTMO cathode active materials (like Choi's) by reducing thermal runaway. Appx13-14. The similarities between the two references' individual components therefore reaffirmed Dr. van Schalkwijk's testimony that a POSITA would have expected success in making the combination because a POSITA would have expected Kim's dinitrile compound to work with Choi's electrolyte solution and impart similar benefits when applied to Choi's active materials. Appx15-17.

That the cathode materials are similar[9] supports the Board's finding of a motivation to combine with a reasonable expectation of success, because the similarities show that the electrolyte additives suggested by Kim would operate successfully when applied to Choi's cathode materials. The Board, relying on Choi's and Kim's disclosures as well as Dr. van Schalkwijk's testimony, found:

> **Because Choi's cathode active material likewise contains a transition metal, such as cobalt, the references support a reasonable inference that the same sort of cyano group complex would be formed if a dinitrile compound were included in Choi's electrolyte**. [Appx2177-2178; Appx2225 ¶¶ 37-40]. On this record,

---

[9] Maxell, in a footnote only, presents an undeveloped argument that "[t]o the extent the Board asserts that the overlapping cathode materials between Choi and Kim are relevant to the inquiry of a motivation to combine with a reasonable expectation of success, the Board commits legal error." Blue Br. 45 n.7. First, substantive arguments made only in a footnote are waived. *CommScope Technologies LLC v. Dali Wireless Inc.*, 10 F. 4th 1289 (Fed. Cir. 2021). Regardless, the Board made clear it was not relying on overlapping cathode materials, so Maxell's footnote argument is inapposite. *See* Appx12 n.9.

there is no evidence that Choi's dopants would have interfered with complexation between the surface of a cathode active material and an aliphatic nitrile compound or formation of a protective layer on the cathode, as described by Kim.  To the contrary, Dr. van Schalkwijk testified that the addition of small amounts of an additive element, such as magnesium, to the cathode "wouldn't change . . . the types of results they were looking for in terms of film formation on what is substantially lithium cobalt oxide or lithium nickel oxide."  [Appx3465 at] 37:18-40:3 (discussing Kim).

Appx16-17; *see also* Appx16 (citing Appx2176; Appx2179 (Choi); Appx2213 (Abstract); Appx2225-2226 ¶¶ 32, 33, 37-42; Appx2214 Figs. 1, 2 (Kim)).  The Board also relied on "Dr. van Schalkwijk's testimony that a POSITA would have been motivated to include the aliphatic nitrile compound of Kim as an electrolyte additive in the battery of Choi 'to increase thermal stability and improve discharge characteristics in the resultant batteries' and would have expected the addition of the aliphatic nitrile compound to be effective."  Appx16 (citing Appx1973-1974 ¶¶ 145, 146).  The testimony reinforces the Board's finding.

In the Blue Brief, Maxell argues that the similarity of the cathode materials merely signifies that both Choi and Kim are in the same field of art.  Blue Br. 44-46.  But as the Board found, "[a]t the oral hearing, [Maxell's counsel **conceded** that [Maxell] is not arguing that the result would be different when combining a dinitrile (or mononitrile) compound with a 'complex' cathode material [as Maxell argued Choi's to be], as compared with a 'basic' cathode material [as Maxell argued Kim's to be]."  Appx17; *see also* Appx792 at 32:7-20 (hearing transcript).  Thus, the Board

did not rely on the similarity of Choi's and Kim's cathode materials to show merely that the references are in the same general field "without more," As Maxell argues. *See* Blue Br. 32, 43, 46 (citing precedent for the notion that broadly characterizing two references as falling within the same field, "without more," is not enough to support obviousness). Here, there **was** more. Much more. The similarities of Choi's and Kim's cathode materials provided yet another reason why a POSITA would have expected success in combining the references. In particular, a POSITA would have reasonably expected the chemical reaction and advantages described in Kim to operate in substantially the same way when Kim's aliphatic dinitrile electrolyte additive is used with Choi's substantially similar cathode materials. Appx16-17 ("Because Choi's cathode active material likewise contains a transition metal, such as cobalt, the references support a reasonable inference that the same sort of cyano group complex would be formed if a dinitrile compound were included in Choi's electrolyte.") (citing Appx2177-2178; Appx2225 ¶¶ [0037]-[0040]).

## 2. As the Board found, Choi and Kim use similar anode materials.

Both Choi and Kim use carbon (or graphite) anode active materials. Appx2178; Appx2183 (Choi); Appx2228¶¶ [0072]-[0073] (Kim); Blue Br. 46-47. Maxell does not dispute that fact. Instead, like its argument about the cathode materials, Maxell relies on the similarity of Choi's and Kim's anodes (and the common use of carbon or graphite anodes in the art for lithium-ion batteries) as

supposed reasons why there would not have been a motivation to combine. Blue Br. 46-47 (citing Appx1922 ¶¶ 48, 50; Appx4326 ¶¶ 48, 50). Here too Maxell's argument fails.

Kim specifically identifies the limitations of these types of anode active materials, which (as with the cathode materials) include gas generation at high temperatures, which may result in thermal runaway. Appx12-13 (citing Appx261-262 (Petition arguments); Appx1970 ¶ 142 (Dr. van Schalkwijk's testimony); Appx2173-2181 (Choi); Appx2224-2228 ¶¶ 2-10, 69, 72 (Kim)). For similar reasons as stated for the cathode materials, the fact that these anode materials are similar supports the Board's finding that it would have been obvious to add Kim's suggested additives to Choi's electrolyte because it shows that a POSITA would have had a reasonable expectation of success in making the combination. The similarities between the anode active materials used in Choi and Kim make it likely that the electrolyte additives suggested by Kim would operate in substantially the same ways when applied to Choi's anode materials, producing the same desirable result. Appx12-13; Appx16-17. Thus, the commonplace use of the same anode materials in the field provides additional evidence that a POSITA would have expected that modifications to the cathodes and electrolyte solutions could still be used with the same anode materials, without interfering with or compromising the safety or stability of the battery system.

### 3. As the Board found, Choi and Kim use similar nonaqueous solutions.

The Board correctly found that "[b]oth Choi and Kim teach an electrolyte solution comprising (1) a nonaqueous organic solvent such as ethylene carbonate, propylene carbonate, dimethyl carbonate, diethyl carbonate, methyl ethyl carbonate, and γ-butyrolactone; and (2) a lithium salt such as $LiClO_4$, $LiCF_3SO_3$, $LiPF_6$, $LiBF_4$, $LiAsF_6$, and $LiN(CF_3SO_2)_2$." Appx13 (citing Appx2185 (Choi); Appx2227 ¶¶ 62, 63 (Kim)). The similarity of these solutions supports the Board's finding that a POSITA would have had a reasonable expectation of success. The similar nonaqueous electrolyte solutions in Choi and Kim mean, as the Board found, that a POSITA would have understood that "the references support a reasonable inference that the same sort of cyano group complex would be formed if a dinitrile compound were included in Choi's electrolyte," for the same reasons as discussed above with respect to the interaction of the similar electrolyte solutions with similar cathode active materials. Appx13; Appx16-17.

Maxell provided no evidence that the nonaqueous solutions would operate substantially differently or that the combined electrolyte solutions would not otherwise meet the challenged claim limitations of the Maxell patents. Accordingly, the similarity of the nonaqueous electrolyte solutions of Choi and Kim support the Board's factual finding that a POSITA would have had a reasonable expectation of

success when adding the dinitrile compounds of Kim to Choi's electrolyte solution and battery system.

### C. Substantial Evidence Supports the Board's Finding of a Motivation to Combine Choi and Kim Based on a Motivation to Use Dinitrile Compounds Over Mononitrile Compounds.

The Board outlined a third reason why there would have been a motivation to combine Choi and Kim. The Board expressly found that "a POSITA would have been motivated to use a dinitrile compound" (as in Kim) rather than a mononitrile compound (as in Choi). Appx20. The Board explained that a "POSITA would have expected better performance from a dinitrile compound." Appx21. In so finding, the Board relied on concessions from Maxell's counsel, Amperex's expert testimony, Kim's own teachings, and corroborating evidence, all of which confirmed that a POSITA would have recognized that Kim's dinitrile additives would offer numerous technical benefits over Choi's mononitrile additives, motivating a POSITA to combine the teachings. Appx20-22; *see also* Appx12-17.

First, as the Board recounted in the Final Written Decisions, "[a]t the oral hearing, [Maxell]'s counsel **conceded**, 'I don't believe there is anything in the record to say that thermal stability could not have been further improved' by a dinitrile compound in the electrolyte when using a complex cathode material as disclosed in Choi." Appx18 (citing Appx788 at 28:2-13).

41

Next, the Board relied on Dr. van Schalkwijk's testimony. The Board was "persuaded by" his uncontroverted deposition testimony that "a POSITA would have expected better performance from a dinitrile compound than from a mononitrile compound" for a long list of technical reasons, including that a POSITA would have expected better performance from a dinitrile compound than from a mononitrile compound, that a dinitrile would provide better film formation using less additive as compared to a mononitrile, and that using a dinitrile (unlike a mononitrile) would not affect the conductivity of the electrolyte, which a POSITA would know is "supremely important." Appx21 (citing Appx3464-3466 at 35:13-23, 41:12-23, 41:24-42:5, 42:6-10), *see also* Appx3466 at 42:16-24. The Board likewise credited Dr. van Schalkwijk's testimony (and related evidence in support) that a dinitrile compound has a favorable effect as compared to an electrolyte solution containing no dinitrile compound. Appx21-22.

Corroborating evidence from the Abe reference confirmed that using dinitrile additives would give "a favorabl[e] effect to a lithium secondary battery" and that "the use of a mononitrile compound in place of a dinitrile compound give[s] almost no favorable effect to the discharge capacity retention." Appx21-22; Appx64; Appx2286-2287 ¶ 108, Tables 1-2. The Board noted that the record evidence described the improvement achieved by adding a dinitrile as "enhancement of a discharge capacity retention without lowering the initial discharge capacity after a

long term charge-discharge cycles." Appx22 (citing Appx2286-2287 ¶ 108, Table 1). Thus, substantial evidence supports the Board's finding that it would have been obvious to use the specific aliphatic dinitrile compound additives suggested by Kim with Choi because a POSITA would have recognized that they offered an improvement over mononitriles.

While recognizing that Kim's exemplary aliphatic nitrile compounds all constitute dinitriles, Maxell's Opening Brief relies on a sentence in Kim indicating it was **possible** that mononitriles could be used. Blue Br. 41 (citing Appx2226 ¶ [0045]). Therefore, Maxell's argument goes, because Choi already discloses mononitrile solvents in its compound (benzonitrile and acetonitrile), Maxell contends that Kim would not further improve Choi. Blue Br. at 37-43. But here again, Maxell is merely rearguing evidence that the Board considered and rejected. Foremost, the Board relied on Kim for its teachings regarding dinitriles (and their benefits), and Kim's singular statement about mononitriles does not undermine the Board's approach. Moreover, the Board found that Kim's statement about mononitriles was "speculative," merely raising the **possibility** that mononitriles might provide the same benefit as the specific compounds Kim uses (all of which are dinitriles). Appx20. This Court's role is not to reweigh the factual evidence presented and reach an independent conclusion. *See Consol. Edison*, 305 U.S. at 229; *NTP*, 654 F.3d at 1292. This Court's role is to assess whether substantial evidence supports the

Board's finding. Here, substantial (indeed extensive) evidence supports the Board's finding.

The Board found—correctly—that a POSITA would have been motivated to use the dinitrile additives suggested by Kim for the many reasons described above. Appx20-22. Substantial evidence supports the Board's finding.

### III. This Court Should Affirm the Board's Obviousness Determination Because Substantial Evidence Supports the Underlying Findings Regarding Using Mg and Al, and Using Them in the Claimed Concentration.

Substantial evidence, including undisputed evidence, supports the Board's finding that Choi expressly discloses using both Mg and Al as dopants in its cathode material, and that a POSITA would have found it obvious to use those specific elements, thus satisfying the requirement of $M^2$ in the '446 patent claims.[10] The Board also had substantial, and undisputed, evidence that Choi discloses the claimed molar concentration "z" within the claimed range of $0.002 \leq z \leq 0.05$.

Addressing these two issues, Maxell argues that the Board made a "multi-step modification of Choi." Blue Br. 24-25. But the Board did not modify Choi at all.

---

[10] Maxell's appeal as to this issue concerns only whether a POSITA would have been motivated to select Mg and Al for purposes of the '446 patent claims. Maxell makes no such argument for the '019 patent claims, as Maxell concedes that Choi expressly discloses using Mg, which is all that is required to satisfy $M^2$ in the '019 patent claims. *See* Blue Br. 53-61 (addressing Mg and Al for the '446 patent claims, and not addressing Mg alone for the '019 patent claims); *id*. at 20 (acknowledging that Choi expressly discloses using Mg alone, such as in Choi's example compound of $LiCo_{0.95}\mathbf{Mg_{0.05}}O_2$).

It did not need to since Choi's pertinent disclosures are express. But Maxell argues that the Board modified Choi in two ways. Blue Br. 24-25. First, Maxell says the Board modified Choi "by selecting" Mg and Al from among Choi's list of elements. Blue Br. 24. That is no modification, because Choi clearly and expressly discloses using both Mg and Al. *See, e.g.*, Appx23 (Board finding that "[t]here is no dispute that Choi discloses Mg and Al as possible constituents of a cathode active material"). The Board's second and final "modification" of Choi (according to Maxell) is the Board's recognition that the concentration "z" claimed in the Maxell patents "is a result-effective variable" where the optimum range of Mg (for the '019 patent) or Mg and Al (for the '446 patent) "would have been discovered by a POSITA by routine experimentation." Blue Br. 25 (quoting Appx30). Here too there is no modification. Choi expressly discloses having a molar concentration "z" for the elements in the range "$0 \leq z \leq 0.5$." Appx2174-2175. Choi's range fully encompasses the range claimed in the Maxell patents, which is "$0.002 \leq z \leq 0.05$."

Both Board findings—the finding on Choi's disclosure of Mg and Al, and the finding on Choi's disclosure of the claimed concentration—are addressed below.

### A. As the Board found, Choi expressly teaches using Mg and Al, and a POSITA would have found it obvious to use the elements that Choi says to use.

The Board considered and relied on extensive, often undisputed, evidence that a POSITA would have been motivated to select Mg and Al from among the elements

expressly taught by Choi. Foremost, the Board recognized that Choi expressly discloses using both elements for "M" (which corresponds to $M^2$ in the Maxell patents). Choi provides a limited list of possible elements and teaches that "M is **at least one** element selected from **Al**, Ni, Mn, Cr, Fe, **Mg**, Sr, V or rare earth elements." Appx23 (citing Appx2177-2178). Unsurprisingly, the Board found "[t]here is **no dispute** that Choi discloses Mg and Al as possible constituents of a cathode active material." Appx23.

In addition to Choi's undisputed disclosure of both Mg and Al, the Board found that "[Maxell] **does not dispute** [Amperex]'s evidence that a POSITA would have selected Mg and Al from the elements Choi teaches for M." Appx27. The Board relied on and credited expert testimony and documentary evidence establishing in detail why a POSITA would have been motivated to select Mg and Al from Choi's limited list of candidate elements. Appx23-29. Much of that evidence was undisputed. *See, e.g.*, Appx23 (Board finding that "**[u]ndisputed evidence** shows that a POSITA would have had several reasons to select Mg and Al from the options Choi discloses for element M"). The Board identified four such reasons, stating:

> These **undisputed** reasons include: (1) that Mg would enhance the cathode material's electronic conductivity; (2) that Al would provide structural enhancement to the cathode; (3) that Mg and Al would be less likely to disrupt the structure of the cathode material because they are the smallest elements in Choi's list; and (4) that Mg and Al would

not be oxidized or reduced because they each have singular oxidation states.

Appx23-24 (citing Appx272-273 (Amperex's Petition); Appx1996-1999 ¶¶ 185-188 (Dr. van Schalkwijk's testimony); Appx2926-2932 (Madhavi, teaching that co-doping lithium nickel cobalt oxide with both Al and Mg provides benefits that doping with Al alone does not provide)).

The Board's findings were also supported by expert testimony from Dr. van Schalkwijk, which the Board credited and quoted. *See, e.g.*, Appx23-25; Appx1997-1998 ¶¶ 186-187 (declaration testimony). The Board then concluded: "[W]e find that [Amperex] and Dr. van Schalkwijk . . . rely on **undisputed evidence** from before the foreign priority date of the '446 patent showing that a POSITA would have had multiple reasons to select Mg and Al from the elements Choi teaches for M." Appx28.

The Board's cited evidence also included Dr. van Schalkwijk's deposition testimony. He described several reasons why a POSITA would have selected Mg and Al from Choi's limited list of candidate elements, including that (1) Mg has only one oxidation state and "has a size that will fit into the lattice in the place of a cobalt atom quite well"; (2) Mg and Al both have single oxidation states, and for the additive transition metals in a lithium cobalt oxide battery, having a single oxidation state is better than having multiple oxidation states; (3) both Mg and

Al were among the first elements ever doped into the lithium cobalt oxide lattice; (4) Mg offered the greatest increase to the [lithium cobalt oxide's] conductivity (and that this was well known to a POSITA) and to phase transition alteration; (5) Mg alters the phase transition process "so that the battery's reaction is much more reversible"; and (6) Mg's +2 oxidation state gives the electrons "another place to go" (compared, for example, to cobalt's +3 and +4 oxidation states), enhancing the conductivity of the structure.  Appx3477-3481 at 85:14-103:7.

Dr. van Schalkwijk also testified about the shortcomings of each of the **other** elements listed by Choi for $M^2$—the elements besides Mg and Al. Appx3477-3481 at 90:25-92:7 (testifying that manganese has "multiple oxidation states" and "doesn't do anything structural," chromium is "too large and has multiple oxidation states," iron is "rather large and has multiple oxidation states," strontium is "too large," vanadium is "too large," and the seventeen rare earth elements were "physically too large" and "most of them would be cost prohibitive").  This testimony highlighted why a POSITA would have selected Mg and Al over the other elements listed by Choi.

Still further, Dr. van Schalkwijk's declaration and deposition testimony was corroborated by cited scientific papers.  The Board relied on this as well.  Appx25-26.  The evidence confirmed that a POSITA would have understood Mg and Al dopants to have the benefits that Dr. van Schalkwijk identified, further supporting a

motivation to select and use both of them.  Appx2926-2932 (Madhavi); Appx2914-2918 (Tukamoto).  Maxell never disputed the contents of any of this cited evidence, let alone whether using Mg or Al doping was known in the art, and thus has Maxell has forfeited the arguments it now raises (at Blue Br. 56-57) because it did not make those arguments before the Board.  *See, e.g.*, Appx435-479 (raising no such argument).  Dr. van Schalkwijk also identified other practical considerations that the Board relied upon.  *See, e.g.*, Appx24-27; Appx272-273 (Amperex's Petition); Appx1996-1999 ¶¶ 185-188 (Dr. van Schalkwijk's declaration testimony); *see also* Appx3477-3481 at 85:14-103:7 (deposition testimony explaining why a POSITA would have selected Mg and Al from the list of Choi's elements, and not selected the other elements).

Along with relying on Amperex's expert, the Board recognized that Maxell's expert Dr. Lucht **agreed** with the factors that Amperex's expert said would be considered by a POSITA in selecting which elements to use.  The Board explained that "Dr. Lucht **agrees** that size and oxidation state of a dopant are considerations when developing a lithium-ion battery."  Appx27.  The Board also found that "Dr. Lucht **does not controvert** Dr. van Schalkwijk's testimony that the small size and singular oxidation states of Mg and Al would have prompted a POSITA to select these elements from Choi's list of options for M."  *Id*.; Appx2985-2987 at 111:4-118:10; *see also* Appx2982-2983 at 98:22-99:18, 100:13-22, 101:21-6, 113:21-15

49

(Dr. Lucht confirming that Mg and Al were known dopants in the lithium battery art, and that a POSITA would have been motivated not to use too much Al when using Al to provide stabilization in a cathode active material).

Amperex also presented undisputed evidence of other lithium cobalt oxide-based batteries doped with **both** Mg and Al, which confirmed Dr. van Schalkwijk's testimony that selecting Mg and Al would have been obvious to a POSITA. Appx2926-2932 (Madhavi); Appx2871-2872 (Sato); Appx2882 (Watanabe). For example, Madhavi, disclosed a lithium nickel cobalt oxide doped with Mg and Al, and taught that "doping with Al and Mg provides benefits that doping with Al alone does not provide." Appx26 (citing Appx2926-2932). Another reference, Sato, disclosed an exemplary cathode active material that used both Mg and Al as dopants. *See* Appx32 (citing Appx2871-2872 ¶ [0096], Table 2 (illustrating test results with $Li_{1.00}CoAl_{0.015}Mg_{0.015}O_2$ samples showing improved charge/discharge efficiency and capacity retention compared to samples using identical total concentrations of Mg or Al alone)). Yet another reference, Watanabe, taught a cathode active material according to the formula $Li_xCo_{1-y}M_yO_2$ that "preferably" used "at least one of Mg, Al, and Mn" as dopants M in total concentrations of "at least" 0.005. Appx32-33 (citing Appx2882 ¶ [0036]). Each of these corroborating references supported the Board's finding "that using both Mg and Al as dopants provides additional benefits over using one element alone." Appx26-27.

As the Board found, Maxell and its expert failed to rebut Amperex's testimony and corroborating documents. Appx23-29; Appx2977 at 77:1-13, 79:4-18. Maxell labels Dr. van Schalkwijk's testimony as conclusory, but as shown above it was far from conclusory. The evidence was extensive, detailed, and buttressed by contemporaneous evidence establishing precisely why a POSITA would have used Mg and Al as dopants in lithium cobalt oxide lattices, and why they were the best candidates to use from among the limited list of elements identified by Choi.

As noted earlier, Maxell did "no[t] dispute that Choi discloses Mg and Al (Appx23), and Maxell did "not dispute" Amperex's evidence that a POSITA would have selected Mg and Al (Appx27).[11] Instead, as the Board explained, Maxell argued that in Choi "M isn't required at all," and that Choi's suggestion to use Mg and Al are "just one pair of elements" out of a larger list, and that none of Choi's specific examples use both Mg and Al. Appx27. The Board rejected Maxell's arguments, and substantial evidence supports the Board's view.

First, the fact that Choi does not *require* "M" is beside the point. Maxell does not dispute that Choi discloses cathode active materials that optionally *do* use M, and the Board relied on that disclosure for its finding. Appx23-29; *see* Blue Br. 7,

---

[11] Maxell admits that Choi's disclosure expressly "allows Mg." Blue Br. 50. Choi's examples of suitable compounds include $LiCo_{0.95}Mg_{0.05}O_2$— an express disclosure of using Mg in the compound (in a concentration of 0.05, which is within the concentration claimed in the Maxell patents of "$0.002 \leq z \leq 0.05$." Appx2179.

51, 53, 59-60 (Maxell acknowledging that Choi discloses using M with Mg and Al).

Obviousness does not require **every** embodiment of a prior art reference to satisfy the claims. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2005) (it is error "to limit the disclosure of the prior art reference to a preferred embodiment"); *In re Mills*, 470 F.2d 649, 651 (CCPA 1972) (when evaluating obviousness, "a reference is not limited to the disclosure of specific working examples").

Maxell also argues that Choi does not suggest using more than one element for M, but that argument ignores Choi's express and undisputed disclosure that "M is **at least one element** selected from Al, Ni, Mn, Cr, Fe, Mg, Sr, V or rare earth elements" Appx23 (citing Appx451-452 (Maxell's Response); Appx2177-2178 (Choi)). In Maxell's Opening Brief, Maxell repeatedly admits that Choi may "optionally contain one **or more** of a list of elements." Blue Br. 7, 51, 53, 59-60. Essentially, Maxell tries to limit Choi's disclosure to only certain of its exemplary embodiments rather than the optional but limited combinations that Choi expressly teaches. But "a reference must be considered not only for what it expressly teaches, but also for what it fairly suggests." *In re Burckel*, 592 F.2d 1175, 1179 (CCPA 1979). Here, Choi expressly teaches using **more** than one element and suggests a limited list of candidate elements to use in combination with each other, and that short list includes both Mg and Al. Appx2177-2178. Given this disclosure,

substantial evidence supports the Board's finding that Choi, on its face, discloses using both Mg and Al.

Maxell next argues that the number of possible combinations of doping elements in Choi counsels against the Board's findings, and that Mg and Al are "just one pair of elements" that were never specifically disclosed together in an exemplary embodiment. Blue Br. 53-54. But the evidence summarized above, and relied on by the Board, shows otherwise and makes clear that Amperex presented sufficient evidence that the combination was disclosed. Choi did not need to provide an example that specifically uses both Mg and Al. As the Board found, "[t]here is **no dispute** that Choi discloses Mg and Al as possible constituents of a cathode active material," and Maxell did "not dispute" Amperex's evidence that a POSITA would have selected Mg and Al. Appx23 (citing Appx451-452; Appx2177-2178); Appx27. The Board explained—correctly—that under *Mills*, 470 F.2d at 651, when evaluating obviousness, "a reference is not limited to the disclosure of specific working examples." Appx28 (quoting *Mills*).

The evidence summarized above shows that the Board's findings—that Choi expressly discloses using Mg and Al, and that a POSITA would have selected Mg and Al—is well supported by substantial evidence.

**B. As the Board found, Choi's disclosed concentration range ($0 \leq z \leq 0.5$) fully encompasses and renders obvious the claimed concentration range ($0.002 \leq z \leq 0.05$).**

For the reasons described above, substantial evidence supports the Board's finding that a POSITA would have used Mg (which is undisputed, pertinent to Maxell's '019 patent claims) or Mg and Al (pertinent to Maxell's '446 patent claims). The remaining issue raised by Maxell is whether substantial evidence supports the Board's further finding that a POSITA would have found it obvious to use a certain molar amount of these compounds, which both Choi and the Maxell patents refer to as a molar amount or concentration "z." Substantial evidence supports the Board's finding.

Choi expressly teaches a molar concentration "z" where "z" is "$0 \leq z \leq 0.5$." Appx2175. The claims in the Maxell patents required a molar concentration "z" where "z" is "$0.002 \leq z \leq 0.05$." Appx103 ('446 patent); Appx1022 ('019 patent).

The Board found—correctly—that "[i]t is **undisputed** that Choi's disclosed range ($0 \leq z \leq 0.5$) encompasses the claimed range ($0.002 \leq z \leq 0.05$), which is sufficient to support prima facie obviousness." Appx29. The Board further found that "[i]t is also **undisputed** that Choi discloses a specific cathode active material containing an amount of Mg within the claimed range." Appx30. And the Board found that "**[u]ndisputed evidence** establishes that a POSITA would have understood that the concentration of Mg and Al in the cathode active material is a

result-effective variable, and the optimum range of Mg and Al concentration would have been discovered by a POSITA by routine experimentation."  Appx30; *see also* Appx33 ("[Maxell] does not dispute [Amperex's] evidence that a POSITA would have understood that that the concentration of Mg and Al in the cathode active material is a result-effective variable that would have been optimized through routine experimentation.").  The Board also found that Maxell failed to come forward with evidence of teaching away, unexpected results, or criticality, or any other pertinent objective indicia indicating that the overlapping range would not have been obvious.  Appx33-35.  These findings alone warrant affirmance.

But in this appeal, Maxell argues that substantial evidence does not support the Board's finding that Choi's range encompasses the claimed range, arguing this was an "oversimplification."  Blue Br. 63.  Maxell also contends that the Board erred by applying a presumption of obviousness.  *Id.*  Neither argument is apt.  A larger range taught by a prior art reference (e.g., "$0 \leq z \leq 0.5$") that encompasses or subsumes a smaller range claimed in the '446 patent (e.g., "$0.002 \leq z \leq 0.05$") indeed establishes a presumption of obviousness.  *In re Harris*, 409 F.3d at 1341 ("a prima facie case of obviousness arises when the ranges of a claimed composition overlap the ranges disclosed in the prior art"); *E.I. du Pont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1006 (Fed. Cir. 2018) ("such overlap creates a presumption of obviousness").

Maxell relies on *In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003), where this Court stated that "a prima facie case of obviousness typically exists when the ranges of a claimed composition overlap the ranges disclosed in the prior art." Blue Br. 62. Maxell also relies on *Genetics Institute, LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1306 (Fed. Cir. 2011), and statements in that case cabining an overbroad reading of *Peterson*. Blue Br. 62. This Court's ruling in *Genetics Institute* (and *Peterson*) do not impact this appeal. *Genetics Institute* turned on a lack of a motivation to optimize within a range of proteins disclosed in the prior art. Specifically, the prior art provided "no suggestion or stated need for further experimentation" and "no motivation to optimize for some value within the range" of proteins disclosed by the prior art patent, and the party failed "to explain why, with knowledge of the claimed range of proteins in the [prior art] patent, one of ordinary skill would have sought out a range encompassing larger recombinant proteins (i.e., proteins having smaller amino acid deletions), such as the range of proteins claimed in the [challenged] patent"). *Id.* at 1305-1306. Here, by comparison, Choi discloses a range that fully encompasses the claimed range, and the evidence supplied to and relied on by the Board shows extensive undisputed evidence of a motivation to optimize within the range disclosed in Choi.

For example, the Board received and relied on evidence that the concentration of Mg and Al in Choi is a result-effective variable because a POSITA understood that adding Mg and Al increased the stability of the cathode structure.   Appx30-33 (citing Appx1999-2000 ¶ 189 (Dr. van Schalkwijk's testimony explaining why a POSITA would have used the smallest amount of Mg and Al possible to stabilize the structure); Appx2914-2918, Fig. 6 (Tukamoto); Appx2866-2872 ¶¶ [0029], [0096], Table 2 (Sato); Appx2882 ¶ [0036] (Watanabe)); *see In re Applied Materials, Inc.*, 692 F.3d 1289, 1295-96 (Fed. Cir. 2012) (where the prior art discloses overlapping ranges, "it is not inventive to discover the optimum or workable ranges by routine experimentation" where the parameter is a result-effective variable) (quoting *In re Aller*, 220 F.2d 454, 456 (CCPA 1955)).   As noted above, the Board found that Maxell **did not dispute** Amperex's "evidence that a POSITA would have understood that the concentration of Mg and Al in the cathode active material is a result-effective variable that would have been optimized through routine experimentation." Appx33.

The Board also relied on unrebutted evidence that "a POSITA would have known to use as small an amount of Mg and Al as necessary to stabilize the structure without substantively interfering with the electrochemical reaction and also would have understood that amounts within the claimed range would provide

these beneficial results." Appx34 (citing Appx1999-2000 ¶¶ 188-189 (Amperex's expert's declaration testimony); Appx2866-2872 ¶¶ [0029], [0096], [0101], Table 2 (Sato); Appx2882 ¶ [0036] (Watanabe); Appx2914-2918, Fig. 6 (Tukamoto); Appx3481-3482 at 104:19-106:3 (Amperex's expert's deposition testimony)). The Board also found that Amperex's expert testimony was corroborated by other prior art references such as "Tukamoto," "Sato" and "Watanabe." Appx31-33. As the Board found, Tukamoto tested Mg-doped cathode concentrations of 0.01, 0.05, and 0.08 and found that "as the amount of Mg increases, the discharge capacity decreases" and the cathode with the lowest Mg content (0.01, which falls within the claimed range) had the best discharge characteristics. Appx2914-2918, Fig. 6. Sato disclosed a cathode active material doped with Mg and Al ($Li_{1.00}CoAl_{0.015}Mg_{0.015}O_2$) with a combined molar concentration of 0.03, which also falls within the claimed range. Appx32 (citing Appx2866-2872 ¶ [0096], [0101], Table 2). And Watanabe disclosed a cathode active material "preferably" doped with "at least one of Mg, Al, and Mn," with a combined molar concentration of "at least" 0.005, which falls within the claimed range. Appx32-33 (citing Appx2882 ¶¶ [0032], [0036]). Still further, the Board found (as "undisputed") that

Choi itself discloses a specific working embodiment that included a concentration of Mg of 0.05, which is within the claimed range.  Appx30, Appx2179. [12]

Maxell's Opening Brief argues, for the first time,[13] that "if the concentration of Mg and Al are result-effective, so must the concentration of each of the other 23 potential elements of Choi's M, as well as the other elements comprising X—resulting in an optimization problem that is hopelessly broad."  Blue Br. 71.  In support, Maxell cites *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1364, 1376 (Fed. Cir. 2021), for the proposition that if one variable is result-effective then all the variables of a claim are also result-effective.  Blue Br. 70. Foremost, Maxell has not explained whether or how it would matter if all of Choi's variables are result-effective—an issue that the Board did not need to decide and did not decide.  In any event, *ModernaTx* is inapplicable here because it did not even involve an overlapping range.  Also, the patent owner in *ModernaTx* demonstrated that the claimed variables interacted in an unpredictable or unexpected way that taught away from the claimed combination.  Here, Maxell

---

[12] In footnote 13 on page 65 of the Blue Brief, Maxell makes a new argument regarding a previously uncontested claim limitation.  First, arguments made only in a footnote are waived.  *CommScope Technologies*, 10 F. 4th at 1289.  Second, Maxell forfeited this argument because it never raised it to the Board, giving Amperex no opportunity to rebut it.  *See, e.g.*, Appx435-479 (raising no such argument); *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020).

[13] By not presenting this argument to the Board, Maxell forfeited it.  *Google Tech. Holdings*, 980 F.3d at 863.

did nothing of the sort. As the Board found, Maxell "present[ed] no data, comparative or otherwise." Appx34. Maxell instead "reli[ed] on conclusory statements in the specification," which was "not enough to satisfy its burden to come forward with evidence of unexpected results or criticality." *Id.* Continuing, the Board found that Maxell's expert, Dr. Lucht, "present[ed] no objective evidence of unexpected results or criticality for the molar range of $M^2$." *Id.*

Amperex, on the other hand, presented extensive evidence, summarized by the Board in the Final Written Decision, showing why a POSITA would have used Mg and Al from the limited list identified by Choi and would not have used the other elements. *See* Appx29-34. Thus, the Board here correctly found (and Maxell **did not dispute** the evidence showing) that the optimal range of Mg and Al concentration alone could have been discovered by routine experimentation. Citing Dr. van Schalkwijk's testimony and the contemporaneous documentary evidence,[14] the Board found that "[t]he unrebutted evidence . . . demonstrate[d] that a POSITA would have known to use as small an amount of Mg and Al as

---

[14] Tukamoto, Sato, and Watanabe confirmed Dr. van Schalkwijk's testimony that a POSITA would have known that as metal additive (e.g., Mg) content increases beyond a threshold (e.g., 0.03), initial capacity decreases. Appx2914-2918, Fig. 6 (Tukamoto); Appx2866-2872 ¶ [0029] (Sato); Appx2882 ¶ [0036] (Watanabe). Further, Madhavi and Sato confirmed that using both Mg and Al provides additional benefits over using either element alone. Appx26-27; Appx2926-2932 (Madhavi); Appx2866-2872 ¶ [0096], Table 2 (Sato).

necessary to stabilize the structure without substantively interfering with the electrochemical reaction and also would have understood that amounts within the claimed range would provide these beneficial results." Appx34; Appx2914-2918, Fig. 6 (Tukamoto); Appx2866-2872 ¶¶ [0029], [0096], [0101], Table 2 (Sato); Appx2882 ¶ [0036] (Watanabe); Appx1999-2000 ¶¶ 188-189 (Dr. van Schalkwijk's declaration testimony); Appx3481-3482 at 104:19-106:3 (Dr. van Schalkwijk's deposition testimony).

## IV. This Court Should Reject Maxell's Arguments Relying on Evidence That Maxell Prefers But Which the Board Did Not Accept or Find Credible.

Although Maxell acknowledges the "substantial evidence" standard of review, the bulk of Maxell's Opening Brief focuses on evidence that Maxell contends the Board should have credited but did not. Maxell's approach is off base because the substantial evidence standard does not involve reweighing the facts and evidence, but instead asks only whether the Board had "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison*, 305 U.S. at 229; *NTP*, 654 F.3d at 1292. "[T]he substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007). Here, because there is

substantial evidence supporting the two factual findings made by the Board—that a POSITA would have been motivated to combine the teachings of Choi and Kim, and that a POSITA would have been motivated to select Mg and Al from the elements identified by Choi for M, in the right concentration—it matters not whether Maxell presented any contrary evidence. As described throughout this brief, substantial evidence—much of which was undisputed, agreed, or conceded by Maxell—amply supports the Board's findings. This Court should affirm.

## CONCLUSION

The Board's Final Written Decisions should be affirmed. Even were this Court to disagree, a remand would be required because the Board did not reach all grounds raised in the petitions. *See* Blue Br. 28-29.

Respectfully submitted,

/s/ Kirk T. Bradley
KIRK T. BRADLEY                          BRADY COX
NICHOLAS C. MARAIS                       ALSTON & BIRD LLP
CHRISTOPHER TL DOUGLAS                    Chase Tower, 2200 Ross Avenue,
ALSTON & BIRD LLP                         Suite 2300
1120 South Tryon Street,                  Dallas, Texas 75201
Suite 300                                 (214) 922-3443
Charlotte, NC 28203
(704) 444-1030

*Counsel for Appellee Amperex Technology
Limited*

January 10, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-2256, -2258

**Short Case Caption:** Maxell, Ltd. v. Amperex Technology Limited

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓] the filing has been prepared using a proportionally-spaced typeface and includes __14,000__ words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __01/10/2024__

Signature: __/s/ Kirk T. Bradley__

Name: __Kirk T. Bradley__